**Charles L. BIBBS, Appellant,**

v.

**STATE of Alaska, Appellee.**

Nos. A–3150, A–3158.

Court of Appeals of Alaska.

July 5, 1991.

Leslie A. Hiebert, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

COATS, Judge.

A jury convicted Charles L. Bibbs of sexual abuse of a minor in the second degree, a class B felony. AS 11.41.436(a)(1). Bibbs appeals his conviction to this court. We reverse.

On a Friday evening, March 4, 1988, D.C., a thirteen-year-old girl, called her friend K.S., on a three-way telephone line. While both were on the line, they called D.C.'s friend, James Bibbs, the defendant's sixteen-year-old brother. The defendant, Charles Bibbs, answered the phone. When D.C. learned that James was not home, she struck up a conversation with Bibbs instead; they had never previously met or even spoken to each other. Without Bibbs' knowledge, K.S. listened to the first ten minutes of the conversation and then hung up.

According to D.C., Bibbs asked her where she went to school; D.C. answered that she was in the seventh grade at Mears. Bibbs denied that D.C. told him anything about her school. There was conflicting testimony over whether D.C. told Bibbs that she was thirteen or eighteen years old. D.C. and K.S. both testified that D.C. stated she was thirteen years old, while Bibbs claimed D.C. said she was eighteen. Bibbs said he was twenty-one years old. (Bibbs was actually twenty-two at the time.) During the conversation, which lasted between three and five hours, D.C. and Bibbs decided to meet the next day at D.C.'s aunt's apartment where she was staying.

The testimony of K.S., D.C., and Bibbs differed on whether D.C. and Bibbs discussed sex during the conversation. According to K.S., Bibbs was flirting with D.C. and that from "the way they were talking," she inferred that Bibbs was interested in a "boyfriend-girlfriend relationship." K.S. said Bibbs and D.C. discussed sex, although she did not remember who brought the topic up.

D.C. testified she and Bibbs did not talk about sex. She stated that she and Bibbs talked about seeing each other, but that he

did not indicate that he wanted to have sex with her. She testified that she had told Bibbs not to expect too much and admitted on cross-examination that this statement was made in reference to sex. Bibbs, on the other hand, testified in an *in camera* hearing that he and D.C. discussed sex extensively and explicitly—for about half of the conversation. According to Bibbs, D.C. told him she had had sex with four men, and told him their names and ages.

On Saturday, Bibbs went to D.C.'s apartment, but they did not meet because she had gone out to the mall. D.C. called Bibbs again on Saturday night, explained the mix-up, and invited him to come over the next morning because her aunt, Emma Bolin, would be away from the apartment. On Sunday morning, Bibbs took the bus to D.C.'s apartment and arrived at about 1:00 p.m. D.C. and Bibbs met at the door. D.C. let Bibbs in, they exchanged some small talk, and then started kissing in the hallway. They did not discuss their ages. Within about ten minutes of Bibbs' entrance to the apartment, he and D.C. went into the bedroom and engaged in sexual intercourse. They were interrupted by the arrival of Bolin who was coming home from church. At D.C.'s urging, Bibbs escaped though the window. Because it was winter and he was only partially clothed, Bibbs went back to the apartment to get his shoes and clothing. As he reached the front door, Bolin saw him and brought him back up to the apartment.

D.C. and Bibbs sat together in the living room while Bolin scolded D.C. Eventually, other people arrived including Mark Bolin, D.C.'s cousin, who knew Bibbs. Mark Bolin revealed the fact that Bibbs was in his twenties. Bibbs claims that he did not find out D.C.'s age until her aunt arrived home. When Bolin called the police, Bibbs jumped out the window to escape, but was later apprehended.

At trial, the focus of Bibbs' defense was that he reasonably believed that D.C. was over sixteen years old. He contended that he based his conclusion on the content of his initial telephone conversation with D.C., in which he claims she discussed her prior sexual history and experience in detail. He argued that her open and knowledgeable discussion of sex led him to believe she was older than sixteen because few thirteen year olds would have talked that way.

To establish his defense, Bibbs sought to question D.C. about the specific sexual details she discussed with Bibbs on the telephone. On cross-examination, defense counsel asked D.C. generally about the content of their phone conversations. She stated that she could not remember the subjects they discussed. When asked whether she flirted with Bibbs at all during the five-hour conversation, she denied having done so. Defense counsel asked her if sex was discussed in even a general way. She denied discussing sex with Bibbs, but admitted telling Bibbs "not to expect too much" when they met on Saturday. Although she admitted this statement was in reference to sex, she denied that the comment was triggered by some discussion about sex.

Following the cross-examination, after the jury was excused, defense counsel made an application pursuant to AS 12.45.-045,[1] the rape shield statute, to cross-exam-

---

1. Alaska Statute 12.45.045 governs the admission of evidence of past sexual conduct and provides in pertinent part:

(a) In prosecutions for the crimes of sexual assault in any degree, sexual abuse of a minor in any degree, or unlawful exploitation of a minor, or an attempt to commit any of these crimes, evidence of the complaining witness' previous sexual conduct may not be admitted nor may reference be made to it in the presence of the jury except as provided in this section. When the defendant seeks to admit the evidence for any purpose, the defendant shall apply for an order of the court at any time before or during the trial or preliminary hearing. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that the evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of

ine D.C. in an *in camera* hearing. In support of his application, Bibbs made an offer of proof that he expected that D.C. would admit that she explicitly and in detail told Bibbs about her previous sexual activities and history. Additionally, defense counsel stated that he expected D.C. to admit she told Bibbs about sexual relations which she had with people who were over eighteen years old. Also, defense counsel sought to explore whether D.C. had, on any previous occasion, lied to an older man about her age in order to have intercourse.[2]

Defense counsel argued that D.C.'s testimony—that she made these highly detailed statements about sexual matters to Bibbs—would be probative to Bibbs' state of mind in determining her age and concluding that she was over sixteen. His theory was that it was reasonable for Bibbs to believe that a thirteen year old would not have had such extensive knowledge of sexual matters, such extensive personal experience, nor be as open about sex as D.C.

The court denied Bibbs' request for the *in camera* hearing. Judge Johnstone indicated that, even if D.C. admitted all that counsel hoped she might say under cross-examination, these facts were still insufficient to warrant admission of the evidence.

In *Jager v. State*, 748 P.2d 1172, 1175–76 (Alaska App.1988), we discussed the admission of evidence under the rape shield statute. We stated:

In determining whether evidence of past sexual conduct is admissible under the rape shield statute, the trial judge must find that the evidence is relevant and that its probative value outweighs the probability of undue prejudice, confusion of the issues, or unwarranted invasion of the victim's privacy. The rape shield statute does not prohibit the introduction of evidence of the victim's prior sexual conduct when that evidence is truly relevant. Rather, by requiring the trial judge to engage in a careful balancing of probative value against prejudicial effect, it guards against hasty and ill-considered admission of evidence that is only marginally relevant or truly irrelevant. The balancing test established by AS 12.45.045 is substantially similar to the test of Alaska Rule of Evidence 403, which provides for the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Only when the probative value of evidence relating to prior sexual conduct is outweighed by its potential for prejudice can that evidence be excluded.

*Id.* (footnote omitted). We emphasized that "AS 12.45.045 does not preclude the admission of relevant evidence. When properly applied, the rape shield statute will not encroach on the confrontation clause, because there is no right to confront and cross-examine on irrelevant issues." *Id.* at 1177.

In the instant case, Bibbs was entitled to defend on the ground that he reasonably believed D.C. was sixteen years of age or older.[3] Most of the information Bibbs knew about D.C. came from their telephone call, which lasted several hours. The conversation between D.C. and Bibbs was of critical importance to Bibbs' defense. We therefore believe that Bibbs was entitled to

the questions that may be permitted. The defendant may then offer evidence under the order of the court.

**2.** Bibbs made other offers of proof. We have restricted the offer to set out what we consider to be the most relevant issues.

**3.** AS 11.41.436(a)(1) defines the crime of second degree sexual abuse of a minor as follows:

  (a) An offender commits the crime of sexual abuse of a minor in the second degree if

    (1) being 16 years of age or older, the offender engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least three years younger than the offender,

or aids, induces, causes or encourages a person who is 13, 14, or 15 years of age and at least three years younger than the offender to engage in sexual penetration with another person....

AS 11.41.445(b) provides that:

In a prosecution under AS 11.41.410–11.41.440, whenever a provision of law defining an offense depends upon a victim's being under a certain age, it is an affirmative defense that, at the time of the alleged offense, the defendant reasonably believed the victim to be that age or older, unless the victim was under 13 years of age at the time of the alleged offense.

develop the substance of this conversation. Although the trial judge had considerable discretion to limit Bibbs' questions of D.C., we do not believe that he could completely prevent Bibbs from making the inquiries suggested by counsel. At a minimum, the trial court should have given Bibbs the opportunity in an *in camera* proceeding to ask questions concerning some of the details of the conversation as Bibbs claimed it occurred. If D.C. testified *in camera* to matters which were relevant to Bibbs' defense, Bibbs was entitled to present this testimony to the jury. We accordingly conclude that Judge Johnstone abused his discretion in restricting Bibbs' cross-examination of D.C. We therefore reverse Bibbs' conviction.

The conviction is REVERSED.[4]

MANNHEIMER, J., not participating.

---

4. Our disposition of this issue makes it unnecessary for us to address the other issues raised by Bibbs.

